IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KOP-FLEX EMERSON POWER  
TRANSMISSION CORP. (f/k/a)  
KOP-FLEX, INC.), *et al.*

    Plaintiffs,

    v.                      Civil Action No.: RDB-11-0120

THE INTERNATIONAL ASSOCIATION  
OF MACHINISTS AND AEROSPACE  
WORKERS LOCAL LODGE No. 1784,  
DISTRICT LODGE No. 4, *et al.*

    Defendants.

## **MEMORANDUM OPINION**

In this case, Kop-Flex Emerson Power Transmission Corporation (f/k/a Kop-Flex, Inc.) ("Kop-Flex"), and Emerson Electric Company ("Emerson") (collectively "Plaintiffs")[1] seek certain declaratory judgments regarding collective bargaining agreements ("CBAs") the Plaintiffs negotiated with the International Association of Machinists and Aerospace Workers, its Local Lodge No. 1784, District Lodge No. 4 (the "Union"), and individual Defendants George Hawk, Joseph Martin, Jackie Bolling, John Siemer, and Rose A. Coomes (collectively "Defendants"). Specifically, Kop-Flex seeks a declaration that it is not required to submit to arbitration the issue of whether it has the unilateral right to modify post-retirement health benefits provided to Kop-Flex retirees who retired during the terms of

---

[1] Kop-Flex is a wholly-owned subsidiary of Emerson. *See* Compl. ¶ 12, ECF No. 1.

expired CBAs. Additionally, both Plaintiffs seek a declaration that they have the right to modify the post-retirement health benefits provided to retirees without violating the terms of the CBAs, the employee benefit plans, and other federal laws. The Defendants have moved to refer this matter to arbitration and to stay proceedings. This Court has reviewed the record, as well as the pleadings and exhibits, and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the following reasons, Defendants' Motion to Refer Matter to Arbitration and to Stay Proceedings (ECF No. 16) will be GRANTED.

## BACKGROUND

This dispute concerns a longstanding collective bargaining relationship between Plaintiff Kop-Flex, a manufacturing company, and Defendant International Association of Machinists and Aerospace Workers, Local Lodge No. 1784, the labor union representing Kop-Flex employees. Compl. ¶ 2. Since at least 1986, the collective bargaining agreements negotiated between the parties provided for post-retirement medical and prescription drug benefits. *Id.* ¶¶ 3, 43-37. Specifically, Article XXX, Section 30.3 of each CBA from 1986 to the present contains the relevant language. *Id.* ¶ 55. Each CBA covered a period of approximately three years. *Id.* ¶ 47.

Of particular importance to this litigation is the current (2007-2012) CBA's treatment of hourly employees who retired before the effective date of the current CBA. Specifically, Article XXX, Section 30.3 of the current CBA states that "[c]hanges in the Emerson Trust Prescription Plan as outlined in the plan will be effective for pre and post 65 retirees who retire after January 1, 2004." 2007-2012 CBA p. 70, ECF No. 7-1. Additionally, this section

of the current CBA specifies that pre-65 retirees (*i.e.*, persons hired before September 19, 1999) will have medical coverage and those retirees will be responsible for certain weekly contributions. *Id.* pp. 66-70. Of particular importance is the current CBA's reference to weekly contribution levels effective in 2000, 2001, 2002, and beyond. These references indicate that the current CBA contemplates benefits of persons who retired before the effective date of the current 2007-2012 CBA.

In addition to the references to retiree health benefits, each Collective Bargaining Agreement from 1986 to the present contains grievance and arbitration provisions. Article XX, Section 20.0 of the current CBA states "[i]f there is *any* dispute concerning the interpretation or application of *any* of the provisions of this Agreement, such dispute *shall*, at the written request of either the Company or the Union *be submitted to arbitration*." *Id.* p. 52 (emphasis added). Moreover, Article XIX, Section 19.2 of the current CBA, which sets out the specific grievance procedures to be undertaken by the parties, states that "[t]he grievance procedure and arbitration provided herein *shall* constitute the *sole and exclusive* remedy to be utilized by the parties hereto for such determination, decision, adjustment or settlement of any and all grievances as herein defined." *Id.*

On September 9, 2010, the Plaintiffs announced their intention to unilaterally change the prescription drug benefit package for Kop-Flex retirees and their dependents which would become effective on January 1, 2011. *See* Compl. ¶¶ 5, 76. Pursuant to this change, employees who retired on or before September 1, 2007, were age 65 or older, and were Medicare eligible, would no longer be able to rely on the Kop-Flex benefit plan as the primary provider of prescription drug benefits. *Id.* ¶ 78. The Defendants contend that this

3

unilateral action violates the specific dictates of Article XXX of the *current* CBA, as well as the provisions of past CBAs relating to retiree medical benefits.

In that vein, the Defendants, pursuant to the grievance procedure outlined in Article XIX of the current CBA, filed a grievance with Kop-Flex contesting the legality of the unilateral changes made to the retiree prescription drug benefit plan by the Plaintiffs. *Id.* ¶ 100. Kop-Flex denied the grievance, and the Union invoked the arbitration procedures. *Id.* ¶ 101. Kop-Flex advised the Union that it is not obligated to arbitrate insofar as, *inter alia*, the retirees retired before the effective date of the current CBA and are therefore not covered by that CBA or its arbitration procedures. Furthermore, Kop-Flex advised the Union that it does not represent the retired Kop-Flex employees and therefore has no standing to represent them. Finally, Kop-Flex took the position that entitlement to post-retirement medical or prescription drug benefits negotiated through prior CBAs did not survive the expiration of those CBAs. *Id.* ¶ 102. The changes to the prescription drug benefit plans took effect as scheduled on January 1, 2011.

The Plaintiffs, in instituting this action, request this Court to issue a class action declaratory judgment that they are not required to submit to arbitration the issue of whether the Plaintiffs have the unilateral right to modify medical and prescription drug benefits provided to Kop-Flex retirees. Additionally, the Plaintiffs seek a declaratory judgment that their actions do not violate the current or prior CBAs negotiated between the parties, the various employee benefit plans, the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141, *et seq.*

4

Pending before this Court is the Defendants' Motion to Refer Matter to Arbitration and to Stay Proceedings (ECF No. 16). The five individual Defendants and some 52 additional retirees, dependents, and surviving spouses over the age of 65 have authorized the Union to represent them in arbitration over the January 1, 2011 changes to their prescription drug plans. According to the Defendants, these 57 authorizations represent some 77 percent of the persons directly affected by the Plaintiffs' actions. *See* Defs.' Mem. at 6, ECF No. 16-1; Rivers Decl. ¶¶ 6-7, ECF No. 16-2.

## STANDARD OF REVIEW

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.* requires that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*Id.* at § 2. The FAA also requires that a federal court stay any proceedings that present a controversy which the parties have agreed to arbitrate:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

*Id.* at § 3.

In *AT&T Technologies Incorporated v. Communications Workers*, the Supreme Court of the United States established a presumption concerning the scope of arbitrable issues under the FAA, and reiterated the four principles on which courts must rely in determining whether a particular dispute is subject to arbitration. 475 U.S. 643, 648-49 (1986) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). First, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* at 648. Second, "the question of arbitrability—whether a collective bargaining agreement creates a duty for parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *Id.* at 649. Third, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential of the underlying claims." *Id.* Finally, "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.* (internal quotation marks omitted).

Despite this presumption, agreements to arbitrate are fundamentally about private choice. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers*, 363 U.S. at 582. Accordingly, the determination of what disputes are arbitrable is focused on the intent of the parties. *See AT & T Techs., Inc.*, 475 U.S. at 648-49 ("[A]rbitrators derive their

authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration.").

Labor unions have statutory standing to compel arbitration under Section 301(b) of the Labor Management Relations Act, which provides that a "labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States." 29 U.S.C. § 185(b). Federal courts have the authority to compel arbitration, but in making that determination this Court is mindful that its role is limited to determining the "question of arbitrability," or the "gateway dispute about whether the parties are bound by a given arbitration clause." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

## ANALYSIS

The Plaintiffs contend that the Defendants' Motion seeking compelled arbitration is premature and cannot be enforced at this stage in the litigation. Of crucial importance to the Plaintiffs' argument, is their argument that the retired Kop-Flex employees may not seek solace in the *current* CBA insofar as they have no standing under that CBA. In other words, the Plaintiffs argue that despite the fact that the current CBA contains provisions relating to retiree medical and prescription drug benefits, those retirees were retired prior to the effective date of the current CBA, are not parties to it, and therefore cannot seek to enforce its provisions. The Plaintiffs argue instead that the *expired* CBAs control the relationship between Kop-Flex and the retirees, and that in order to enforce the arbitration provisions of those CBAs, this Court must first determine whether the prescription drug and medical benefits accrued and became vested—a determination that turns on disputed issues of

7

material fact that must be resolved at trial or at the summary judgment stage. Finally, the Plaintiffs contend that the active (*i.e.*, not retired) Kop-Flex employees currently have no arbitrable dispute with Kop-Flex insofar as the changes made to the *retiree* prescription benefit plans do not affect the current employees—and any argument that Kop-Flex may choose to unilaterally change retirement benefits for the current employees in the future is "speculative" and not substantial enough a concern to warrant arbitration under the CBA.

On the other hand, the Defendants argue that because the *current* CBA contains provisions regarding medical and prescription drug benefits for retired employees, and contains a broad arbitration provision that subjects "any dispute" to arbitration, the *current* CBA is the operative agreement and, in accordance with the presumption in favor of arbitrability, this Court should refer this dispute to an arbirtrator. In other words, the Defendants argue that by entering into a CBA that expressly includes terms according certain rights to retirees and that contains a broad arbitration provision, Kop-Flex essentially consented to arbitration of grievances brought on behalf of retired employees. Moreover, with respect to the active Kop-Flex employees, the Defendants argue that those employees have a non-speculative interest in changes to retiree health benefits. Finally, the Defendants argue that the Local Lodge 1784, the Union itself, has standing to arbitrate this dispute in its own right insofar as it has an interest in maintaining the integrity of the collectively bargained for retiree health benefits.

## I. The *Current* Collective Bargaining Agreement is Implicated

The Plaintiffs rely on a single case (*indeed a single sentence*) for the proposition that the *current* CBA is not the operative agreement, and instead it is the *expired* CBAs that will determine whether unilateral changes may be made to the retiree health benefit plans. Plaintiffs, relying on *Allied Chemical and Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157 (1971), argue that because "'[r]etirees are neither employees nor bargaining unit members,' and are outside of the collective bargaining relationship[,] . . . [a]ny rights regarding post-retirement medical and prescription drug benefits that the Retirees have arise under the applicable, expired CBAs under which a given individual retired . . . ." Pls.' Mem. at 17, ECF No. 17 (quoting *Chemical Workers v. Pittsburgh Plate Glass*, 404 U.S. at 176). The Plaintiffs argue that because "[t]he Retiree class in issue was never employed under the current CBA, never accrued or earned benefits under that CBA and was never represented by the Defendant union with it entered into the current CBA," it therefore "has no rights under the current CBA and no entitlement to rely upon or invoke its arbitration provision." *Id.*

In *Chemical Workers v. Pittsburgh Plate Glass*, the Supreme Court considered whether a midterm modification to the "benefits of already retired employees" was an "unfair labor practice" under the Labor Management Relations Act. 404 U.S. at 159-60. In concluding that midterm modifications to the benefits of retired employees was not an unfair labor practice, the Court concluded that such modifications would constitute unfair labor practices only if the negotiated benefits were a *mandatory* subject of collective bargaining. *Id.* at 164. Specifically, the Court held that because retirees were not "employees" under the LMRA,

9

and only benefits for "employees" was a mandatory subject of collective bargaining, modifications to the benefits of retired employees was not an unfair labor practice. *Id.* at 167-72, 188. In other words, because the employer did not have an affirmative obligation to bargain collectively with the union regarding retiree medical benefits, those benefits are only a *permissive* subject of bargaining. *Id.* at 166-82.

Here, the Plaintiffs interpret the Supreme Court's holding in *Chemical Workers v. Pittsburgh Plate Glass* to mean that because the retirees in question are not "employees" under the current CBA, they have no rights under that document, are not entitled to arbitration, and are only entitled to rights that may have accrued or vested under expired CBAs. However, the collective bargaining agreement before the Court in *Chemical Workers v. Pittsburgh Plate Glass* apparently did not contain an arbitration provision, and the Court expressly left open the possibility that such a provision might be relevant. *See id.* at 188 n.24 ("It does not appear whether the collective-bargaining agreement involved in this case provided for arbitration that would have been applicable to this dispute. We express no opinion, therefore, on the relevance of such a provision to the question before us."). Moreover, the Court noted the fact that unions have a "undeniable" interest "in assuring that negotiated retirement benefits are in fact paid and administered in accordance with the terms and intent of their contracts," *id.* at 176 n.17, and even suggested that the *future* retirement benefits of *active* employees are a mandatory subject of collective bargaining. *Id.* at 180 ("To be sure, the future retirement benefits of active workers are part and parcel of their overall compensation and hence a well-established statutory subject of bargaining.").

Indeed, subsequent to *Chemical Workers v. Pittsburgh Plate Glass*, nearly every court to consider the issue has relied on the presumption in favor of arbitrability in finding that disputes regarding retiree benefits are generally subject to arbitration—so long as the collective bargaining agreements in question include terms regarding retiree health benefits. For example, in *Exelon Generation Company, LLC v. Local 15, International Brotherhood of Electrical Workers*, 540 F.3d 640 (7th Cir. 2008), the United States Court of Appeals for the Seventh Circuit concluded that a dispute concerning retiree health benefits was arbitrable where the company voluntarily entered into a CBA that included terms relating to retirees and that contained a broad arbitration clause that did not specifically exclude from the umbrella of arbitration grievances brought by or on behalf of retirees. *Id.* at 645-647. In that case, the Seventh Circuit distinguished an earlier Seventh Circuit case that held that a dispute between retirees and a company was not subject to arbitration where the CBA in question only provided for arbitration between the company and "employees." *Id.* at 645 (distinguishing *Rossetto v. Pabst Brewing Co.*, 128 F.3d 538 (7th Cir. 1997)). In making its determination, the Seventh Circuit noted the "critical distinction" between the collective bargaining agreements in the two cases:

> The CBA in *Rossetto* expressly defined an arbitrable grievance as one between Pabst and an "employee." And retirees are not employees. The CBA here, however, does not define an arbitrable grievance as one between the company and an employee. Nor does the CBA in this case expressly restrict arbitration to grievances by employees. The arbitration agreement is broader than that. [It] applies to "*any* dispute or difference . . . between the Company and the Union or its members as to the interpretation or application of any of the provisions of this Agreement . . . .
>
> None of these provisions, however, or any other provision in the CBA we might add, expressly excludes from arbitration a grievance brought by the Union on behalf of retirees. The parties could have written the CBA to

11

>exclude retiree grievances from the arbitration agreement if they had intended to, but they did not.

*Exelon*, 540 F.3d at 645-46 (internal citations omitted, ellipsis in original, emphasis added).

Other courts have similarly applied the presumption of arbitrability to disputes involving retirees: *See, e.g., United Steelworkers of Am. v. Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 560-61 (9th Cir. 2008) (applying presumption of arbitration to dispute concerning retiree benefits); *Cleveland Elec. Illuminating Co. v. Util. Workers Union of Am.*, 440 F.3d 809, 815 (6th Cir. 2006) ("[T]he presumption of arbitrability applies to disputes over retirees' benefits if the parties have contracted for such benefits in their [CBA] . . . ."); *United Steelworkerws of Am., AFL-CIO v. Canron, Inc.*, 580 F.2d 77, 82 (3d Cir. 1978) (applying presumption); *Burcicki v. Newcor, Inc.*, No. 02-70230-DT, 2010 WL 1131451, at *11 (E.D. Mich. March 23, 2010) (applying the presumption and collecting cases); *Kalmar Indus. USA LLC v. Int'l Bhd. of Teamsters Local 838*, 452 F. Supp. 2d 1154, 1164 (D. Kan. 2006) ("[C]ontrary to the Company's claim that permissive subjects are not arbitrable, federal courts have routinely enforced permissive subject awards where a union and company bargain for the permissive benefits and include the benefits in their contract.").

Here, it is clear that Plaintiff Kop-Flex and the Defendant Union mutually bargained to include provisions for retiree benefits (Section 30.3 of the agreement) in their *current* CBA. *Chemical Workers v. Pittsburgh Plate Glass*, the only case relied upon by the Plaintiffs, does not change this conclusion, and the *current* 2007-2012 CBA is the operative contract in this case. Accordingly, in light of the Supreme Court's pronouncement that "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on

the potential of the underlying claims," *AT & T Technologies Incorporated*, 475 U.S. at 649, this Court need not consider whether the retirees' rights have "vested."

**II. The *Current* Collective Bargaining Agreement Contains a Broad Arbitration Provision and Contemplates as Arbitrable Disputes Concerning Retiree Benefits**

As previously mentioned, Article XX, Section 20.0 of the current CBA states "[i]f there is *any* dispute concerning the interpretation or application of *any* of the provisions of this Agreement, such dispute *shall*, at the written request of either the Company or the Union *be submitted to arbitration.*" 2007-2012 CBA p. 52, ECF No. 7-1 (emphasis added). This expansive arbitration provision clearly indicates an intent on behalf of the parties to submit to arbitration disagreements surrounding terms contained in the 2007-2012 Collective Bargaining Agreement. Moreover, as is also clear from the terms of the current CBA, the parties chose to include provisions concerning retiree benefits in the current CBA, and there is no evidence, let alone any express provisions, excluding retiree grievances from arbitration. As noted by the Supreme Court in *Warrior & Gulf Navigation*, 363 U.S. at 584-85, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here . . . the arbitration clause [is] quite broad." *See also AT & T Techs.*, 475 U.S. at 650 (only an "express provision excluding a particular grievance from arbitration . . . [or] the most forceful evidence of a purpose to exclude the claim from arbitration" can remove the claim from a broad arbitration clause) (quoting *Warrior & Gulf Navigation*, 363 U.S. at 584-85).
13

Finding no "forceful evidence" that would indicate an intent to take the retiree medical and prescription benefits outside the ambit of arbitration—indeed the Plaintiffs do not even argue this point—this Court must apply the presumption in favor of arbitrability. "The presumption of arbitration is particularly strong due to . . . the lack of any explicit language in the CBAs excluding the claims at issue here from arbitration." *E.I. Du Pont de Nemours & Co. v. Ampthill Rayon Workers, Inc.*, 290 F. App'x 607, 612 (4th Cir. 2008). Therefore, after applying the presumption in favor of arbitrability, this Court concludes that the Plaintiffs consented to arbitrate disputes over retiree medical and prescription drug benefits.

## III. Consent of the Retirees

Having concluded that the parties dispute is indeed arbitrable, this Court now considers whether the Defendant Union must obtain the consent of the retirees it seeks to represent at arbitration. Although the Plaintiffs maintain that the issue of consent is "irrelevant" insofar as the issue is not subject to arbitration, this Court has already rejected that argument and finds it prudent to briefly address the issue of retiree consent.

Briefly, there is a split of authority regarding whether a union must obtain the consent of third party retirees prior to arbitrating disputes concerning those retirees. On the one hand, the United States Courts of Appeals for the Sixth and Seventh Circuits have held that consent of some, but not all, retirees is required before the union may represent those retirees in arbitration proceedings. In *Cleveland Electric Illuminating Company v. Utility Workers*

*Union of America*, the Sixth Circuit concluded that "a union has standing[2] to arbitrate the meaning of a collective bargaining agreement that grants rights to third parties simply by virtue of the fact that the union is a party to the contract," but noted that a union could only do so after obtaining "the assent of the retirees before purporting to represent them at arbitration." 440 F.3d 809, 817 (6th Cir. 2006) (citation omitted). In making this determination, the court concluded that unless the union obtained the consent of the retirees it sought to represent, there was the "danger . . . [that] retirees could lose their rights to pursue their claims directly through [the Company] if the Union obtains an unfavorable arbitration decision." *Id.* While the Sixth Circuit determined that the Union had to obtain the consent of at least some of the retirees, it declined to hold that the consent of all the retirees was necessary—concluding that "[t]he arbitrator is in a much better position to establish the consent guidelines." *Id.* at 818. Similarly, the Seventh Circuit in *Exelon Generation Company, LLC v. Local 15, International Brotherhood of Electrical Workers* declined to find that consent of all retirees was necessary, and noted that such a requirement would, in effect, "allow those retirees who choose not to consent to the Union's representation in arbitration to "hijack" the rights of the retirees who do not consent to such representation and arbitration." 540 F.3d 640, 648 (7th Cir. 2008). That court went on to allow the union to arbitrate claims on behalf of retirees when it had collected the consents of seven out of nearly six thousand retirees. *Id.* at 648-49.

Other courts, most notably the United States Court of Appeals for the Ninth Circuit, have declined to find consent a necessary prerequisite to arbitration by a union on behalf of

---

[2] *See infra* Section IV for a discussion of the Union's standing.

15

retirees. *See Int'l Bhd. of Elec. Workers, Local 1245 v. Citizens Telecommunications Co.*, 549 F.3d 781, 786-88 (9th Cir. 2008). In *Citizens Telecommunications*, the Ninth Circuit concluded, after distinguishing the *Cleveland Electric* decision of the Sixth Circuit, that once an issue is determined to be arbitrable under a collective bargaining agreement, that issue should not be subject to any "consent rule" if such a rule is not specifically contemplated by the CBA itself. *Id.* at 788 ("This harm [of duplicative proceedings] is also insufficient to justify the creation of a 'consent' rule' that prevents the union from arbitrating an otherwise arbitrable grievance. The fact that [the Company] may be exposed to allegedly duplicative proceedings is a result of its own bargaining. We will not write into the CBA a consent requirement provision for which [the Company] failed to bargain."); *see also Frontier Communications v. Int'l Bhd. of Elec. Workers, Local 503*, No. 07-10327(GEL), 2008 WL 1991096, at *5-6 (S.D.N.Y May 6, 2008) (discussing the "flawed" reasoning of a "consent rule," and noting, *inter alia*, that there exists no textual support for a consent rule in the Labor Management Relations Act—instead "the consent rule is simply made up by the Sixth Circuit to remedy a perceived unfairness.").

Here, this Court need not definitively determine whether to apply a so-called "consent rule." As the Defendants in this case have noted, the Union has obtained the written consents of over 77 percent of the affected retiree group—and the Plaintiffs have not challenged this assertion. *See* Defs.' Mem. at 11, and Rivers Decl. at ¶¶ 6-7. While this Court has doubts as to whether consent is necessary, even under the rubric of the cases that consider retiree consent a necessary prerequisite to arbitration by a union on their behalf, the

16

Defendants have obtained the consent of a large majority of the affected retirees and may proceed to arbitration on their behalf.

**IV. Union Standing to Arbitrate on Behalf of Retirees and Current Employees**

The final issues relating to the Defendants' motion are the Plaintiffs' contentions that the retirees lack standing under the current CBA to invoke its arbitration provisions, and that with respect to the active (*i.e.*, not retired) Kop-Flex employees, there exists no arbitrable controversy insofar as the unilateral changes made to the retiree prescription drug benefits only affect retirees. Both issues will briefly be addressed together.

As a preliminary matter, it is not clear whether "standing" is the appropriate inquiry. As the Supreme Court has stated: "whether [an] arbitration provision inures to the benefit of [a party] and may be construed, in light of the circumstances surrounding the litigants' agreement, to cover the dispute" between them, "presents a straightforward issue of contract interpretation," and not "standing." *Perry v. Thomas*, 482 U.S. 483, 492 (1987). As this Court has already concluded that the dispute is subject to arbitration, such "'procedural questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.'" *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964).

Nevertheless, and regardless of whether the issue is "standing" or "arbitrability," this Court concludes that the retirees may pursue arbitration under the current CBA and that the active employees have a legitimate interest in the ability of Kop-Flex to unilaterally change retiree benefits when those benefits are specifically discussed in the collective bargaining agreement negotiated between the parties. *See, e.g.*, *Int'l Bhd. of Elec. Workers, Local 1245 v.*

17

*Citizens Telecomm. Co.*, 549 F.3d 781, 786-87 (9th Cir. 2008) (quoting the Supreme Court's pronouncement in *Chemical Workers v. Pittsburgh Plate Glass*, 404 U.S. at 180, that "future retiree benefits were part and parcel of an active employee's compensation," and concluding that "an impermissible reduction in retirement benefits under the CBA affects current employees as well as retirees.").

Moreover, it is clear that the Union itself, as party to the CBA in question, may litigate or arbitrate disputes arising out of that agreement. Where a negotiated collective bargaining agreement clearly includes provisions governing benefits afforded to retired workers, "then under accepted contract principles the union has a legitimate interest in protecting the rights of the retirees and is entitled to seek enforcement of the applicable contract provisions." *United Steelworkers of Am. AFL-CIO v. Canron, Inc.*, 580 F.2d 77, 80-81 (3d Cir. 1978); *see also Citizens Telecomm.*, 549 F.3d at 788-89 ("Even if this right [to retiree medical benefits] belongs to the CBA's third party beneficiaries (the current employees and retirees), rather than the contracting party (the union), denial of this right affects the union in a personal and individual way: [the union] is forced to incur the expense of either suing in federal court to compel arbitration or litigating the alleged violation of the CBA itself in federal court."); *Exelon Generation Co., LLC v. Local 15, Int'l Bhd of Electrical Workers*, 540 F.3d 640, 646-47 (7th Cir. 2008); *Cleveland Elec Illuminating Co. v. Utility Workers Union of Am.*, 440 F.3d 809, 815 (6th Cir. 2006) ("several courts, including this one, have held that were a union and a company bargain for retirees' benefits in their contract, the union has standing to represent the retirees in any dispute concerning those benefits"); *Frontier Communications v. Int'l Bhd. of Elec. Workers, Local 503*, No. 07-10327(GEL), 2008 WL 1991096, at *3 (S.D.N.Y

May 6, 2008) ("[the union's] interest in enforcement is based not merely on the formality that [the union] is a party to the contract, but also on the 'undeniable' interest unions have 'in assuring that negotiated retirement benefits are in fact paid and administered in accordance with the terms and intent of their contracts.'") (quoting *Chemical Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. at 176 n.17 (1971)).

## CONCLUSION

Accordingly, for the reasons stated above, the dispute concerning the Plaintiffs' unilateral changes to retiree health benefits is an arbitratable dispute that the parties included in the 2007-2012 CBA. After determining that the retirees, active employees, and the Union itself all have enforceable interests under the CBA, and after applying the presumption in favor of arbitrability, this Court concludes that Defendants' Motion to Refer Matter to Arbitration and to Stay Proceedings (ECF No. 16) will be granted, and this case will be administratively stayed pending exhaustion of the arbitral process. The parties will be directed to proceed with arbitration of their claims pursuant to the grievance and arbitration procedures in the 2007-2012 Collective Bargaining Agreement.

A separate Order follows.

Dated: January 6, 2012

/s/_____
Richard D. Bennett
United States District Judge